FILED
CLERK

12:38 pm, Apr 18, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
BRYAN J. OWENS,

                      Plaintiff,

            -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-2632 (ADS)

**APPEARANCES:**

**Law Office of Charles E. Binder and Harry J. Binder, LLP**
*Attorneys for the Plaintiff*
485 Madison Avenue, Suite 501
New York, NY 10022
      By:    Charles E. Binder, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Jason P. Peck, Special Assistant United States Attorney

**SPATT, District Judge**:

On May 2, 2017, Bryan J. Owens (the "Plaintiff" or the "Claimant") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that she is ineligible to receive Supplemental Security Income ("SSI") benefits.

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is granted, and the Defendant's motion is denied. Accordingly,

1

this matter is remanded back to the ALJ for further proceedings pursuant to this Court's instructions.

# I. BACKGROUND

On September 29, 2010, the Plaintiff applied for SSI benefits under the Act, alleging that he has been disabled since January 9, 2006. The Plaintiff claims that he is disabled primarily due to degenerative disc disease of the lumbar spine, a heart condition, as well as bipolar, depressive and anxiety disorders.

His claim was initially denied on November 16, 2011, and he requested a hearing. Owens appeared with counsel before Administrative Law Judge (the "ALJ") Joseph Faraguna on May 17, 2012. On May 29, 2012, ALJ Faraguna issued a written decision in which he found that the Plaintiff was not entitled to disability benefits under the Act.

The Plaintiff sought a review by the Appeals Council on July 16, 2012. On August 8, 2013, the Appeals Council remanded the claim for a new hearing and decision to re-determine the effect that the Plaintiff's mental impairments had on his ability to work and, if necessary, obtain vocational expert testimony to determine the effect that the Plaintiff's non-exertional impairments had on his ability to work.

A second hearing was held before ALJ Faraguna on January 30, 2014. On February 18, 2014, ALJ Faraguna issued a written decision in which he again found that the Plaintiff was not entitled to disability benefits under the Act. The Plaintiff again sought a review by the Appeals Council on March 6, 2014. On May 6, 2015, the Appeals Council remanded the claim for a new hearing and decision to determine whether the Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability, to consider new evidence, and, if

necessary, to obtain vocational expert testimony to determine the effect that the Plaintiff's non-exertional impairments had on his ability to work.

A third hearing was held before ALJ April M. Wexler on September 9, 2015.  In a decision dated November 3, 2015, ALJ Wexler found that the Claimant was not entitled to disability benefits under the Act.  The Plaintiff requested a third review by the Appeals Council on November 18, 2015.  On March 2, 2017, the Appeals Council denied review.  The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On May 2, 2017, the Plaintiff filed the instant action.  The parties submitted the matter to the Court as fully briefed on November 17, 2017.

The Court notes that the Plaintiff no longer disputes the mental residual functional capacity finding made by the ALJ.  As such, the instant motion focuses on the Plaintiff's physical impairments.

For purposes of these motions, familiarity with the underlying administrative record is presumed.  The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant.  In this regard, references to the record are denoted as "R."

## II.  DISCUSSION

### A.  The Standard for Benefits Under the Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person may only be disabled if his

3

"impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 416.920(a). *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The Claimant bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Claimant is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa,* 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability,

as well as the claimant's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

## B. The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179-81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo.*" *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec.*

*Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a *de novo* review. *See*

*Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

## C. Application to the Facts of this Case

### 1. As to Whether the ALJ Followed the Treating Physician Rule

The Plaintiff contends that the ALJ's Residual Functional Capacity ("RFC") finding failed to properly follow the treating physician rule.

RFC is defined in the regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." Appendix 2, 20 C.F.R. Part 404 subpart P § 200.00(c); *see also* 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.967; *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC as the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" (quoting SSR 96–8p)). This determination requires consideration of "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.967. It takes into account "all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 5:07-CV-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009) (internal citations omitted), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of a claimant's impairments is given "controlling weight," so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *accord* 20 C.F.R. §

416.927(c)(2); *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) ("The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." (citing *Burgess*, 537 F.3d at 128)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014). Although, the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128.

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129); 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

In the Second Circuit, the ALJ is required to "give good reasons in [her] notice of determination or decision for the weight [she] gives [a claimant's] treating source's opinion." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (internal citations omitted). The ALJ is not required to cite each factor explicitly in her decision, but must ensure she applies the substance of the rule. *Halloran*, 362 F.3d at 32. The ALJ cannot substitute "[her] own assessment of the relative merits of the objective evidence and subjective complaints for that of the treating physician." *Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

It is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently. *Id.*; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, when the ALJ uses a portion of a given opinion to support a finding,

while rejecting another portion of that opinion, the ALJ must have sound reasoning for the discrepancy. *See Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor." (internal citations omitted)).

In August of 2014, Dr. P.G. Collin, the Claimant's sole treating physician opined that the Claimant is only able to sit and stand/walk for one to two hours and lift no more than 20 pounds occasionally in an eight hour workday. Further, Dr. Collin noted that Owens can walk one to two blocks without rest or significant pain and requires an unscheduled 15 to 30 minute break approximately every one to two hours, where he needs to recline or lie down. Dr. Collin stated that Owens is likely to be absent from work more than four times per month on average and is not capable of working an eight-hour day, five days per week, on a sustained basis. *See* R. at 23. In a series of questionnaires completed from 2012 through 2015, Dr. Collin opined that Owens is "limited sitting and standing/walking to 1-2 hours each or less each during an 8-hour workday and lifting/carrying to 10-20 pounds occasionally with no limitations upon the use of the arms/hands for reaching, grasping or fine manipulations and … would be absent from work more than three times a month." R. at 23-24.

ALJ Wexler found that the Plaintiff has the RFC to "perform sedentary work … except that he is limited to simple, routine, repetitive tasks and low stress jobs – meaning no work at a fixed production rate pace, with work that is checked at the end of the workday or workweek rather than hourly or throughout the day and he is limited to occasional contact with co-workers and supervisors and no contact with members of the general public." R. at 21. As mentioned above, the ALJ must properly consider the factors cited in *Selian* in order to assign limited weight to a

medical opinion.  ALJ Wexler assigned "little weight" to the opinions from the Plaintiff's treating physician, Pierre G. Collin, M.D. primarily for three reasons: (1) Dr. Collin's medical assessments were allegedly inconsistent with the findings of the diagnostic studies; (2) the medical assessments were purportedly inconsistent with the conservative treatment regimen prescribed by Dr. Collins; and (3) Dr. Collins is a primary care physician, not a specialist in neurology or orthopedics.  *See* Docket Entry ("DE") 15 at 15.  The Court will address each of these reasons in turn.

### a. As to the Diagnostic Studies

The Plaintiff's primary contention is that the ALJ's assignment of "little weight" to Dr. Collin's medical opinion violates the treating physician rule because his opinions are supported by appropriate medical evidence.  As stated above, it is well settled that the opinion of a treating physician as to the nature of the impairment is entitled to "controlling weight" as long as it is supported by medically acceptable laboratory and clinical diagnostic techniques and is consistent with substantial evidence in the record.  *Schisler*, 3 F.3d at 567; 20 C.F.R. § 416.927(c)(2).  The only medical evidence that is specifically cited by ALJ Wexler in according Dr. Collin's medical opinion "little weight" is the two diagnostic studies performed, one in March of 2011 and another in January of 2012.  *See* R. at 24, 872, 874-75.

In March 2011, a radiograph of the lumbar spine revealed degenerative disc disease at the L1-2 level with osteophyte formation, endplate sclerosis and a vacuum phenomenon associated with disc degeneration.  *See* R. at 872.  In January 2012, an MRI of the lumbar spine without contrast was ordered by Dr. Collin.  The test found degenerative disc disease with disc desiccation and disc space narrowing at T11-12, L-1-2, and L2-3.  *See* R. at 874.  In general, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."  *Rosa*, 168 F.3d at 79 (quoting *McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).  A treating physician's interpretation of diagnostic testing and a determination that a patient has a

limitation based on such testing is considered well-supported and entitled to deference. *See Oatman v. Comm'r of Soc. Sec.*, No. 7:13-CV-595, 2014 WL 4384986, at *6 (N.D.N.Y. Sept. 4, 2014).

By concluding that the two diagnostic studies demonstrate only "extremely mild findings" and thus discounting Dr. Collin's medical opinion, ALJ Wexler impermissibly interpreted the Claimant's medical tests. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (finding that the "ALJ was not at liberty to substitute his own lay interpretation of [a] diagnostic test for the uncontradicted testimony of [the claimant's treating physician], who is more qualified and better suited to opine as to the test's medical significance"); *see also Wolfe v. Colvin*, No. 7:12-CV-0987, 2013 WL 5974225, at *5 (N.D.N.Y. Nov. 8, 2013) ("[T]he ALJ is not a medical professional and is not in a position to opine as to whether abnormalities characterized as 'mild' in an MRI or x-ray report might nevertheless cause significant pain or other limitations."). This lay interpretation of the Plaintiff's medical testing was not based on any other medical opinions that conflicted with those of Dr. Collin as no other physicians examined or rendered opinions regarding the Plaintiff's alleged back impairments. *See* R. at 23-24. This constituted an improper weighing of the medical opinions, and an improper application of the second factor cited in *Selian*.

As such, ALJ Wexler violated the treating physician rule and made an improper RFC determination.

### b. As to the Conservative Treatment Regimen

The Plaintiff also contends that the ALJ's assignment of "little weight" to Dr. Collin's medical opinion violates the treating physician rule because his opinions were improperly discounted based on the use of a conservative treatment regimen. *See* DE 13 at 10. As the ALJ notes in her decision, Dr. Collin prescribed Methadone and Risperdal for the treatment of Owens's

back impairments. This treatment was relied on to assign "little weight" to Dr. Collin's medical opinion. *See* R. at 23-24.

The use of a conservative course of treatment is not a proper reason for rejecting the medical opinion of the treating physician. In the Second Circuit, the opinion of a treating physician is not "to be discounted merely because [the physician] has recommended a conservative treatment regimen." *Burgess*, 537 F.3d at 129 (citing *Shaw*, 221 F.3d at 134); *accord Holman v. Colvin*, No. 12 Civ. 5817, 2014 WL 941823, at *6 n.2 (S.D.N.Y. Mar. 11, 2014) ("The Court notes that the ALJ did erroneously rely on certain factors in evaluating Plaintiff's claim. For example, to support the conclusion that Plaintiff's condition was not as severe … the ALJ noted that the 'medical evidence also reflects that solely conservative treatment was undertaken[.]'" (internal citations omitted)); *Ortiz Torres v. Colvin*, 939 F. Supp. 2d 172, 183 (N.D.N.Y. 2013) (observing that the ALJ "cannot discount a treating physician's opinion because the physician has 'recommended a conservative treatment regimen'" (citing *Burgess*, 537 F.3d at 129)). This is an attempt by the ALJ to "substitute [her] own expertise or view of the medical proof for the treating physician's opinion." *Shaw*, 221 F.3d at 134.

In *Shaw*, the Second Circuit found that it was inappropriate for the ALJ to use the fact that the treating physician only recommended physical therapy, EMG testing and hot packs rather than surgery or prescription drugs to treat the claimant's injuries. *See Id*. at 134. Dr. Collin's treatment regimen was arguably less conservative than the treatment-at-issue in *Shaw*. The Claimant in *Shaw* was prescribed prescription medication in the instant case in addition to his physical therapy, specifically Methadone and Risperdal. *See id*; R. at 23. Therefore, the ALJ's error as it pertains to Dr. Collin's medical opinion is arguably worse than the error found in *Shaw*.

ALJ Wexler's analysis regarding the conservative nature of Dr. Collin's treatment regimen wa improperly used to discount a treating physician's opinion. It was an incorrect application of the third factor cited in *Selian* and an improper RFC determination.

### c. As to the Physician's Lack of Specialty

ALJ Wexler also contends that assigning "little weight" to Dr. Collin's medical opinion is proper because Dr. Collin is a primary care physician, not a specialist. *See* DE 13 at 10. "Courts have found, however, that a treating physician's opinion may be given controlling weight—even if that physician is not a specialist—if the remaining factors in the analysis are satisfied." *Valcourt v. Astrue*, No. 09-CV-4172, 2011 WL 1304250, at *9 (E.D.N.Y. Mar. 31, 2011) (citing *Ilarda v. Chater*, No. CV-95-2180, 1996 WL 389366, at *11 (E.D.N.Y. July 8, 1996)). While this may be used as a factor to weigh Dr. Collin's opinion, it is insufficient on its own to accord "little weight" to his medical opinions. As this is the only factor that counsels against conferring "controlling weight" on Dr. Collin's medical opinion, the ALJ erred in according lesser weight to the opinion.

### d. As to the Legibility of the Treatment Notes

Finally, the Court notes that the parties both comment in their briefing papers on the illegibility of Dr. Collin's progress notes. While the ALJ did not state in her decision that she rejected Dr. Collin's opinion based on any legibility issues, ALJ Wexler did not cite any of the treatment notes that both the Claimant and the Commissioner agree are illegible. These illegible treatment notes begin in January of 2012 and continue through January of 2014; amounting to a two-year gap of treatment notes from the Claimant's only treating physician. While ALJ Wexler mentions the diagnostic studies to discount the opinion, she does not discuss whether Dr. Collin's medical opinion is consistent with his treatment notes. Presumably, that is because she could not read them.

If inconsistencies are found between treatment notes and final opinions, a treating physician's opinion may properly be discounted. *See Campbell v. Astrue*, No. 12-CV-6103, 2013 WL 1221931, at *2 (W.D.N.Y. June 29, 2013). The ALJ's decision to discount the medical opinion of Dr. Collin without recontacting him to clarify his treatment notes constituted error. Such a decision was made without the benefit of approximately *two years* of treatment notes that were part of the administrative record but were illegible. Dr. Collin is the only physician with a treatment relationship with the Claimant and his assessment that the Claimant has significant limitations is inconsistent with the ALJ's findings. This Court is unable to determine whether Dr. Collin's medical opinion regarding the Claimant's limitations is supported by objective medical evidence without *two years* of treatment notes from the *only treating physician* in the record.

While the regulations were amended to remove the provision that required the ALJ to recontact a treating physician "when the report from [a claimant's] medical source contains a conflict or ambiguity that must be resolved" *Quinn v. Colvin*, No. 1:15-cv-723, 2016 WL 4255020, at *12 n.2 (W.D.N.Y. 2016), the ALJ has "discretion to 'determine the best way to resolve the inconsistency or insufficiency'" when an ambiguity arises concerning a medical opinion from a treating physician. *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 416.920b). Thus the regulations still "contemplate the ALJ recontacting the treating physicians when 'the additional information needed is directly related to that source's medical opinion.'" *Jimenez v. Astrue*, No. 12 Civ. 3477, 2013 WL 4400533, at *11 (S.D.N.Y. 2013) (internal citations omitted).

In the Court's view, ALJ Wexler should have contacted Dr. Collin to decrypt those portions of his treatment notes that the ALJ found to be illegible. *See Stewart v. Colvin*, No. 13-CV-0314, 2015 WL 4546050, at *8 (W.D.N.Y. July 28, 2015) ("[P]laintiff's treating physician's notes were

contained within the record but were illegible … the ALJ should have endeavored to clarify the treatment notes rather than simply ignore them and conclude that no evidence in the record supported plaintiff's reports of her symptoms."); *Jackson v. Barnhart*; No. 06-CV-0213, 2008 WL 1848624, at *8 (W.D.N.Y. Apr. 23, 2008) ("The ALJ] should have obtained more detailed and clearer statements from [the claimant's] treating physician, especially since the medical records which appear in the administrative record are often illegible." (internal citations and quotations omitted)); *Miller v. Barnhart*, No. 03 Civ. 2072, 2004 WL 2434972, at *9 (S.D.N.Y. Nov. 1, 2004) ("There is no way for this court to determine whether the illegible information in these reports might have provided further support for [claimant]'s claim.").

Accordingly, the Court remands this case with instructions to reconsider the findings after obtaining clarification of the content of Dr. Collin's treatment notes. On remand, the ALJ is to evaluate the treating physician's medical opinion as detailed above, and either: (1) afford it controlling weight if it is supported by substantial evidence in the record; or (2) assign it less than controlling weight if it is not supported, and give reasons for the weight assigned.

## 2. As to Whether the ALJ Properly Evaluated the Claimant's Credibility

The Claimant also argues that ALJ Wexler failed to properly evaluate Owens's credibility.

To evaluate a claimant's credibility,

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence. In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205-06 (W.D.N.Y. 2005) (quoting *Murphy v. Barnhart*, No. 00 Civ. 9621, 2003 WL 470572, at *10-11 (S.D.N.Y. Jan. 21, 2003)); *see also Wright v. Astrue*, No. 06-CV-6014, 2008 WL 620733, at *3 (E.D.N.Y. Mar. 5, 2008) (listing the same seven factors (citing SSR 96–7)); *Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("[A] finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand.").

ALJ Wexler held that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 23.

ALJ Wexler's reasons are ostensibly the same as those that she relied upon to evaluate Dr. Collin's medical opinion. As discussed in Section II.C.1, the ALJ did not give "controlling weight" to the Plaintiff's only treating physician's medical opinion. This flawed analysis of the

proper weight to accord Dr. Collin's opinion translates into an equally flawed analysis of the ALJ's credibility analysis. *Mortise v. Astrue*, 713 F. Supp. 2d 111, 124-25 (N.D.N.Y. 2010) ("The ALJ's proper evaluation of [the treating physician's] opinions will necessarily impact the ALJ's credibility analysis."). This is exacerbated because the Plaintiff's testimony at the ALJ hearing is consistent with the opinion of his treating physician.

Further, as the Court noted above, the treating physician's treatment notes are in the administrative record, but are illegible to both the parties and presumably the ALJ. Without clarification as to the content of these treatment notes, it is unknown whether the Claimant's testimony is supported or contradicted by the medical evidence in the administrative record. The retrieval of this information is required for proper consideration of the Claimant's objective medical evidence.

Therefore, the ALJ's assessment of the Claimant's credibility in light of the objective evidence in the administrative record is flawed. On this basis, the ALJ's decision must be remanded for proper consideration, in light of the proper objective medical evidence. On remand, ALJ Wexler must obtain the necessary medical evidence from the Claimant's treating physician and review the objective medical evidence in light of the proper application of the treating physician rule. If the objective medical evidence still does not substantiate the Claimant's statements, the ALJ must consider of all the evidence in the record and give specific reasons for the weight accorded.

Owens further argues that the ALJ failed to consider the above-mentioned, non-exhaustive list of factors. As one district court noted, "[i]f the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, [she] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there

are legitimate reasons for the ALJ's disbelief[.]" *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010). The Commissioner argues that the Plaintiff ignores the ALJ's justification that her decision is based on "the reasons explained in this decision." R. at 23. This rationalization falls short of the explanation required under the regulations. *See Fox v. Astrue*, No. 6:05-CV-1599, 2008 WL 828078, at *12 (N.D.N.Y. Mar. 26, 2008) (holding that the ALJ must explain its rejection of the claimant's testimony after considering medical evidence and any other relevant factors "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)))

The record is clear that the ALJ did not consider the required seven factors when evaluating the Plaintiff's credibility, even though it found that the Claimant's testimony is inconsistent with the objective medical evidence in the record. ALJ Wexler's explanation is devoid of sufficient facts to allow a reviewing court to review her reasons for discounting Owens's opinions. *See, e.g.*, *Valet v. Astrue*, No. 10-CV-3282, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012); *Grosse v. Comm'r of Soc. Sec.*, No. 08-CV-4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011); *Mortise*, 713 F. Supp. 2d at 124-25.

ALJ Wexler did not cite the Claimant's daily activities as a reason for rejecting his credibility as Owens's testimony in that regard supported Dr. Collin's medical opinion regarding his limitations. As to his daily activity, Owens testified that he helps his girlfriend with her two children three days a week by making them breakfast and making sure they get on the school bus. He tries to help his mother but is limited by his back impairment. Owens cannot carry heavy groceries nor care for his lawn. *See* R. at 22.

Further, the ALJ failed to evaluate the location, duration, frequency, and intensity of the pain; or precipitating and aggravating factors. *See Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) ("[T]he subjective element of [the claimant's] pain is an important factor to be considered in determining disability." (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)).

As the ALJ's credibility determination failed to take into account the requisite requirements under the regulations, the ALJ's decision is not supported by substantial evidence and subject to remand on this additional basis as well.

## III. CONCLUSION

Accordingly, for the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is granted, and the Defendant's motion for judgment on the pleadings dismissing the complaint is denied. The Plaintiff's motion is granted to the extent that this case is remanded back to the ALJ. That is, she is to (1) clarify of the content of Dr. Collin's treatment notes; (2) properly apply the treating physician rule, as detailed in Section II.C.1; and (3) re-review the objective medical evidence, and if it still does not substantiate the Claimant's testimony, the ALJ must consider of all the evidence in the record and give specific reasons for the weight accorded to the credibility of the Claimant's testimony.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

April 18, 2018

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge